IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION



NELDA MARIE THOMAS,
(SPN # 57060-177)
        Movant,

VS.

UNITED STATES OF AMERICA,

        Respondent.

Crim No. 1:18-cr-00033-C-1

## MOTION FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018

COMES Movant, NELDA MARIE THOMAS ("Thomas"), appearing *pro se,* and in support of this motion would show as follows:

### I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term

of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. PROCEDURAL HISTORY

### A. Procedural Background

On April 11, 2018, a grand jury sitting in the United States District Court for the Northern District of Texas, Abilene Division, returned a two (2) Count Indictment charging Thomas. See Doc. 3.[1] Count 1 charged Thomas with Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B)(viii). *Id.* Count 2 charged Thomas with Distribution and Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *Id.*

On May 29, 2018, a Re-arraignment Hearing was held and Thomas entered a plea of guilty on Count 1 of the Indictment, pursuant to a written Plea Agreement. See Docs. 16, 20.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Northern District of Texas, Abilene Division, in Criminal No. 1:18-cr-00033-C-1, which is followed by the Docket Entry Number.

On September 21, 2018, Thomas was sentenced to a term of 135 months' imprisonment, 4 years Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 30, 31.

### B. Statement of the Facts

#### 1. Offense Conduct

The factual background set forth below is based on the Stipulated Facts in this case:

> Nelda Marie Thomas admits and agrees that beginning on or about a date unknown to the grand jury and continuing to on or about April 11, 2018, within the Northern District of Texas, Abilene Division, and elsewhere, she knowingly and willfully combined, conspired, confederated, and agreed with persons known and unknown to distribute and possess with intent to distribute 50 grams and more, but less than 500 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.
>
> On November 29, 2017, law enforcement agents interviewed Nelda Marie Thomas. During that interview, Thomas admitted to distributing methamphetamine in the Abilene, Texas, area for the past several years. Thomas stated that she obtained one to two ounces of methamphetamine every day for two to three months from Stacy Payne Watkins (prosecuted in a separate federal case). Thomas also indicated that she had purchased 1/4 of an ounce methamphetamine from Watkins' son approximately 12 times in the recent months.
>
> Thomas' confession was corroborated by interviews with several other individuals who acknowledged receiving methamphetamine from Thomas during the time frame of the conspiracy.

3

> On January 22, 2018, a confidential informant purchased 26.7 grams of methamphetamine for $600.00 from Nelda Thomas at her residence located at 2266 Minter Lane, Abilene, Texas.
>
> Thomas admits that she, Watkins, and Watkins' son, directly or indirectly, reached an agreement to distribute or to possess with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. Thomas admits that she knew of the unlawful purpose of the agreement and that she joined in the agreement willfully, that is, with the intent to further the unlawful purpose. Thomas admits that the overall scope of the conspiracy involved 50 grams or more, but less than 500 grams, of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

See Doc. 5 at 2-3.

    2.    <u>Plea Proceeding</u>

On May 29, 2018, a Re-arraignment Hearing was held before Magistrate Judge E. Scott Frost. See Doc. 20. Thomas pled guilty on Count 1 of the Indictment, pursuant to a written Plea Agreement. See Docs. 16. In exchange for Thomas' guilty plea, the government agreed to the following: (1) not to bring additional charges against Thomas based upon the conduct underlying and related to Thomas' plea of guilty; (2) move to dismiss, after sentencing, any remaining charges in the pending indictment. *Id.* at 4.

    3.    <u>Sentencing Proceeding</u>

On September 21, 2018, a Sentencing Hearing was held before Senior Judge Sam R. Cummings. See Doc. 30. Thomas was sentenced to a term of 135 months'

imprisonment as to Count 1 to run concurrent to any sentence imposed in Case No. 9114-P pending in the 104th District Court, Taylor County, Texas. See Doc. 31; followed by 4 years of Supervised Release; and the Court ordered payment of a Mandatory Special Assessment Fee of $100. *Id*. No direct appeal was filed in this case.

### III. DISCUSSION

As a preliminary matter, Thomas respectfully requests that the Court be mindful that "a *pro se* complaint should be given liberal construction, we mean that if the essence of an allegation is discernible ... then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." See *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165 (11th Cir. 2014) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Estelle v. Gamble*, 429 U.S. 97 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

### A. Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)

Congress authorized compassionate release in the Sentencing Reform Act of 1984. It allows federally incarcerated people to appeal for early release if they present certain "extraordinary and compelling" reasons. Upon approval of the request, Bureau

of Prisons ("BOP") makes a motion to a federal judge for a sentence reduction. The Commission sets the "extraordinary and compelling" criteria, which include, but are not limited to, age and terminal illness. The program essentially allows BOP to seek the release of certain elderly and terminally ill inmates, as well as those with special family circumstances, before the end of their prison sentences rather than keep those inmates in prison when they are no longer a significant risk to the community and when they are draining away substantial and valuable BOP resources.

Congress gave the Commission the authority to determine the conditions by which an individual in federal prison could be released for "extraordinary and compelling reasons." It authorized federal courts to reduce a defendant's sentence if that individual meets the criteria set by the Commission. And Congress gave BOP the administrative task of filing motions in federal court if the defendant meets the Commission's criteria for compassionate release.

**B.  Compassionate Release Under The First Step Act**

The First Step Act ("the Act") made important changes to how federal compassionate release works. It changes and expands the compassionate release eligibility criteria; ensures the prisoners have the right to appeal the BOP's denial or neglect of the prisoner's request for a compassionate release directly to court; and provides other important features, such as notification, assistance, and visitation rules.

1.  *Compassionate Release Objective Criteria Under the First Step Act*

The criteria for determining whether a prisoner has an "extraordinary and compelling reason" for a sentence reduction are sometimes broader under the Sentencing Guidelines than under the BOP Program Statement. Prisoners seeking compassionate release and/or filing motions should consult USSG § 1B1.13, in addition to the BOP Program Statement 5050.50 for guidance on what reasons are considered by courts to be "extraordinary and compelling." The differences are outline below.

- **Terminal Medical Condition:**

    o   The prisoner has been diagnosed with a terminal, incurable disease with a life expectancy of 18 months; or

    o   The prisoner has a disease or condition with an end-of-life trajectory, meaning that the disease or condition will lead to death. A specific prediction of time left to live is not necessary.

- **Debilitated Medical Condition:**

    o   BOP: The prisoner has an incurable, progressive illness or has suffered a debilitating injury without hope of recovery. BOP will consider a compassionate release if the prisoner is
    - Completely disabled so they cannot carry on any self-care and is totally confined to a bed or chair; or
    - Able to do only limited self-care and is confined for 50 percent of waking hours to a bed or chair.

7

- o   Sentencing Commission: The prisoner's ability to provide self-care in the prison is substantially diminished and recovery is not expected because the prisoner is
    - Suffering from a serious physical or medical condition;
    - Suffering from a serious functional or cognitive impairment; or
    - Experiencing deteriorating physical or mental health due to age.

- **New Law Elderly Prisoners are those sentenced for an offense that occurred after November 1, 1987, who are**

  - o   70 years old or older; and

  - o   Have served 30 years of the sentence.

- **Elderly Prisoners (with Medical Conditions)**

  - o   BOP
    - 65 years old or older;
    - Suffer from chronic or serious medical condition related to age;
    - Are experiencing deteriorating physical or mental health that substantially diminishes their ability to function in prison;
    - Conventional treatment promises no substantial improvement; and
    - Have served at least 50 percent of their sentence.

  - o   Sentencing Commission
    - 65 years old;
    - Are experiencing serious physical or mental health deterioration due to age; and
    - Have served at least the lesser of 10 years or 75 percent of their sentence.

8

- **Other Elderly Prisoners (BOP only)**

    o   65 years old or older; and

    o   Have served the greater of 10 years of 75 percent of their sentence.

- **Family Circumstances**

    o   Death or incapacitation of the family member or caregiver of the prisoner's minor children (BOP adds that to be eligible, the prisoner must be the only family member capable of caring for the children); or

    o   Incapacitation of the prisoner's spouse or registered partner
    - BOP: "Incapacitation" means the spouse or partner has
        - Suffered a serious injury or debilitating illness and is completely disabled so as to be unable to carry on any selfcare and is totally confined to a bed or chair; or
        - Has severe cognitive defect such as Alzheimer's.
    - BOP: The prisoner must be the only available family caregiver.

2.  *Requests Based on Family Circumstances – Incapacitation of the Prisoner's Husband Due to Life Threatening Health Issue*

In this case, Thomas requests for Reduction in Sentence ("RIS") because her husband, James L. Thomas, has been diagnosed with stage 4 liver disease– Cirrhosis and history of Benign prostatic hyperplasia (BPH), history of Insomnia, history of Hypertension, and history of Chronic obstructive pulmonary disease (COPD). James has had multiple falls due to intermittent left lower extremity weakness. In 2019,

9

James was also diagnosed with acute decompensated chronic systolic and diastolic congestive heart failure, urinary detention, chronic pain, diabetes mellitus type 2, history of chronic hepatitis C virus, debility, and history of brainstem injury. See Exhibit 1. Thomas is James' primary and only available caregiver, meaning there is no other family member or adequate care option that is able to provide primary care for the husband.

**Facts:**

***Cirrhosis***. Cirrhosis is a complication of many liver diseases characterized by abnormal structure and function of the liver. The diseases that lead to cirrhosis do so because they injure and kill liver cells, after which the inflammation and repair that is associated with the dying liver cells cause scar tissue to form. The liver cells that do not die multiply in an attempt to replace the cells that have died. This results in clusters of newly-formed liver cells (regenerative nodules) within the scar tissue. There are many causes of cirrhosis including chemicals (such as alcohol, fat, and certain medications), viruses, toxic metals (such as iron and copper that accumulate in the liver as a result of genetic diseases), and autoimmune liver disease in which the body's immune system attacks the liver.

Stage 4 cirrhosis can be life threatening and people have develop end-stage liver disease (ESLD), which is fatal without a transplant.

*Stage 4: Liver failure*
Your liver has lost all ability to function and unable to heal. Liver failure can be a chronic or acute condition. Acute liver failure strikes fast just in 48 hours as a reaction to poison or a drug overdose. While chronic liver failure developed from cirrhosis may have been going on for years. When you have liver failure, your best option might be a liver transplant.

As liver failure gets worse, it can affect you mentally and physically. You may feel confused and disoriented. You may experience diarrhea, loss of appetite

and lose weight rapidly. Because these symptoms can be caused by many other conditions, it is hard to diagnose liver failure just from a physical exam.

When you get the diagnosis for liver failure, you will immediately get medical attention to salvage what is left of your liver. If this is not possible, the only option may be a liver transplant.

It is important to have your health checked regularly, as liver disease can be detected during the inflammation stage or fibrosis stages through an ultrasound or X-ray of your stomach. If you are treated successfully at these stages, your liver may have a chance to heal itself and recover.

***Chronic Obstructive Pulmonary Disease***. Chronic obstructive pulmonary disease, commonly referred to as COPD, is a group of progressive lung diseases. The most common are emphysema and chronic bronchitis. Many people with COPD have both of these conditions.
Emphysema slowly destroys air sacs in your lungs, which interferes with outward air flow. Bronchitis causes inflammation and narrowing of the bronchial tubes, which allows mucus to build up.

There's no cure for COPD, but treatment can help ease symptoms, lower the chance of complications, and generally improve quality of life. Medications, supplemental oxygen therapy, and surgery are some forms of treatment. Untreated, COPD can lead to a faster progression of disease, heart problems, and worsening respiratory infections.

***Hypertension***. Hypertension is another name for high blood pressure. It can lead to severe health complications and increase the risk of heart disease, stroke, and sometimes death.

Blood pressure is the force that a person's blood exerts against the walls of their blood vessels. This pressure depends on the resistance of the blood vessels and how hard the heart has to work.

Hypertension is a primary risk factor for cardiovascular disease, including stroke, heart attack, heart failure, and aneurysm. Keeping blood pressure under control is vital for preserving health and reducing the risk of these dangerous conditions.

***Diabetes***. Diabetes is a serious condition that causes higher than normal blood sugar levels. Diabetes occurs when your body cannot make or effectively use its own insulin, a hormone made by special cells in the pancreas called islets (eye-lets). Insulin serves as a "key" to open your cells, to allow the sugar (glucose) from the food you eat to enter. Then, your body uses that glucose for energy.

But with diabetes, several major things can go wrong to cause diabetes. Type 1 and type 2 diabetes are the most common forms of the disease, but there are also other kinds, such as gestational diabetes, which occurs during pregnancy, as well as other forms.

3. <u>The First Step Act Gives Prisoners the Right to Go to Court</u>

The most significant change to compassionate release is that the Act provides prisoners the power to file a motion for compassionate release if they can demonstrate they have tried and failed to convince the BOP to do so for them. Before passage of the First Step Act a denial by the BOP was not appealable.

**Prisoners now have the right to file a motion** under 18 U.S.C. § 3582(c)(1)(A)(i) directly with the court under certain circumstances:

- Prisoners may file a motion after the earlier of
   o  having "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion. . ." or
   o  30 days after the date the warden received a request for compassionate release from the prisoner.

- A prisoner **exhausts administrative rights** when one of two things happens:
   o  The Central Office of the BOP rejects a warden's recommendation that the BOP file a compassionate release motion, or

12

   o  The warden refuses to recommend the BOP file a compassionate release motion and the prisoner appeals the denial using the BOP's Administrative Remedy Program.

  4.  *Thomas is Eligible for a Reduced Sentence*

In this case, Thomas' husband, James L. Thomas, age 67, and have the aforementioned chronic health conditions that requires full-time assistance.

Because of the urgency imposed by such unforseen event – incapacitation of James, it is important that the sentencing court decides instantaneously whether to reduce Thomas' sentence after considering the factors in section 3553(a) and if it finds that "extraordinary and compelling reasons" warrant a reduction.

Thomas, currently housed at the Carswell Federal Medical Center, in Fort Worth, Texas ("FMC Carswell"). She has no violent prior convictions and the instant offense was merely for drug conspiracy and distribution. Accordingly, Thomas is not a threat to society. Because of the relatively limited risk of recidivism and the relatively limited potential danger to the community of her release, she was sentenced to 135 months' imprisonment, and her projected release is on November 11, 2027. Since her incarceration, on April 12, 2018, Thomas has completed several courses in the BOP. See Exhibit 2. On top of all the skills she learned in prison, Thomas currently work for UNICA as a licensed operator of General Industry and Construction equipment. See Exhibit 3. Hence, Thomas is well capable of working

to support and provide for herself and her husband. It is imperative that Thomas cares for her chronically ill husband, who has supported her all throughout their married life.

No aspect of Thomas' offense involved violence. Since she was incarcerated, Thomas had no disciplinary infractions at all. Thomas does not have ties to large-scale criminal organizations, gangs, or cartels. Therefore, Thomas qualifies under the limited circumstances that authorize such a motion, and because of the relatively limited risk of recidivism and the relatively limited potential danger to the community of her release.

### III. UNDER THE FIRST STEP ACT, THIS COURT HAS BROAD AUTHORITY TO DETERMINE WHETHER EXTRAORDINARY AND COMPELLING CIRCUMSTANCES EXIST TO MODIFY THOMAS' SENTENCE AND RELEASE HER TO HOME CONFINEMENT.

The First Step Act ("FSA") expressly permits Thomas to move this Court to reduce her term of imprisonment and seek compassionate release. *See* 18 U.S.C. § 3583(c)(1)(A)(i). Under normal circumstances, a defendant can seek recourse through the courts after either (1) the BOP declines to file such a motion on his behalf; or (2) there has been of lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier. *Id*. Although Thomas has not filed a request to the BOP yet, Thomas files this motion now in light of the urgent nature of this matter. See discussion, infra Part III. A.

After exhausting the administrative process, "a court may then 'reduce the term of imprisonment' after finding that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Ebbers*, 2020 WL 91399, at *4, 02-CR-1144 (VEC) (S.D.N.Y. Jan. 8, 2020), ECF No. 384. "In making its decision, a court must also consider "the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

While courts have noted that the Sentencing Commission's applicable policy statement on what constitutes "extraordinary and compelling reasons" to warrant a sentence reduction is anachronistic because it has not been updated since passage of the FSA, they still continue to be guided by the Sentencing Commission's descriptions of "extraordinary and compelling reason." See, e.g., *Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). However, the Sentencing Commission's statements do not constrain the court's independent assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction in light of the First Step Act's amendments. *United States v. Beck*, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019); see also *Ebbers*, 2020 WL 91399, at *4. Indeed, "the district courts themselves have the power to determine what constitute extraordinary

and compelling reasons for compassionate release." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases).

Thomas Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner. First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

Thomas filed a Motion for Compassionate Release to the FMC Carswell, Warden but has not received a response yet. Because 30 days have lapsed and the BOP failed to file a motion on Thomas' behalf, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

Thomas urges this Court to consider the following cases:

1. *United States v. Kataev*, 2020 WL 1862685 (S.D.N.Y. Apr. 14, 2020)

- 51-year-old defendant suffering from "chronic sinusitis" and whose wife is disabled such that she cannot care for their 10-year-old child
- "Defendant's unique health and family circumstances together, and in light of the COVID-19 public health crisis, constitute 'extraordinary and compelling reasons' to modify Defendant's sentence"
- Release date February 2021, Otisville, 36-month sentence
- Government does not object

2. *United States v. Britton*, 2020 WL 4586799, at *1 (S.D.N.Y. Aug. 10, 2020)

16

- 60-month custodial sentence
- Diabetes, high blood pressure, 54 years old
- 3553 – "The Court has considered each of the section 3553(a) factors and finds that the circumstances of the commission of Mr. Britton's crimes, the steps that he has taken to address his control of his addiction and prepare himself for reentry, the disincentive his own medical condition gives him to engaging in behavior that could put him at risk of return to confinement, and his family circumstances in which he is taking on responsibility for the care of his medically vulnerable wife, combined with the harsh and stressful conditions under which he has been confined during the pandemic, are sufficient to address personal deterrence."

Here, although those factors fully support the substantial sentence originally imposed, in the current context of James Thomas' incurable medical condition, Thomas' family believes compassionate release is appropriate at this time so Thomas can live with James as his primary caregiver and attend to all of his medical needs.

It is essential to also note that since Thomas' incarceration began, she has taken numerous steps to attempt to improve herself in "post-conviction rehabilitation." Based on her husband's medical condition and the world's take on the global pandemic right now, and good time credits she has served, Thomas have met all the requirements for compassionate release.

If granted compassionate release, Thomas will reside with her husband, James L. Thomas– where she will act as her husband's sole caregiver. Further information about these release plans upon request.

## V. CONCLUSION

For the above and foregoing reasons, Thomas prays this Court would consider her Motion for Compassionate Release/Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the "extraordinary and compelling reasons" and release her to home confinement or hold a hearing as soon as possible.

Respectfully submitted,

Dated: August 4, 2021

NELDA MARIE THOMAS
REG. NO. 57060-177
FMC CARSWELL
FEDERAL MEDICAL CENTER
P.O. BOX 27137
FORT WORTH, TX 76127

## \CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2021, a true and correct copy of the above and foregoing Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U. S. Mail, postage prepaid, Juanita Fielden, Assistant U.S. Attorney at U.S. Attorney's Office, 341 Pine Street, Room 2101, Abilene, TX 79601.

NELDA MARIE THOMAS

NELDA MARIE THOMAS
REG. NO. 57060-177
FMC CARSWELL
FEDERAL MEDICAL CENTER
P.O. BOX 27137
FORT WORTH, TX 76127

RECEIVED

AUG 1 2 2021

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

August 4, 2021

Ms. Karen Mitchell
Clerk of Court
U. S. District Court
Northern District of Texas
Abilene Division
341 Pine Street, Room 2008
Abilene, TX 79601

      RE:   *Thomas v. United State*
             Crim No. 1:18-cr-00033-C-1

Dear Ms. Mitchell:

      Enclosed please find and accept for filing Movant's Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. Please submit this document to the Court.

      Thank you for your assistance in this matter.

                              Sincerely,

                              */s/ Nelda Marie Thomas*
                              NELDA MARIE THOMAS
                              Appearing *Pro Se*

*Encl. as noted*

Nelda Thomas #57860-177
F.M.C. Caswell W.T.
Federal Medical Center
P.O. Box 27137
Ft Worth, TX 76127




9505 5106 1737 1222 3223 33
USPS TRACKING® #
EXPECTED DELIVERY DAY: 08/14/21

U.S. POSTAGE PAID
PM 3-Day
NAVAL AIR STATION JRB, TX
76127
AUG 10, 21
AMOUNT
$0.00
R2305E125671-72

Ms. Karen Mitchell
Clerk of Court
Northern District of Texas
Abilene Division
341 Pine Street, Room 2008
Abilene, TX 79601

RECEIVED
AUG 12 2021
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS